UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re:

ROBERT A. HILTON,                                    Chapter 13
                                                     Case No. 14-10113

                              Debtor.
---------------------------------------------------------
ROBERT A. HILTON,

                    Plaintiff,

          vs.                                        Adv. Pro. No. 14-90019

U.S. BANK AS TRUSTEE FOR THE
STRUCTURED ASSET SECURITIES
CORPORATION MORTGAGE PASS-
THROUGH CERTIFICATES, SERIES
2004-19XS; CITIMORTGAGE, INC.,

                    Defendants.
---------------------------------------------------------
APPEARANCES:

LAW OFFICE OF CHRISTIAAN VAN NIEKERK         Sandra Poland Demars, Esq.
*Attorneys for Robert A. Hilton*
202 Union Street
Schenectady, New York 12305

LEMERY GREISLER LLC                          Paul A. Levine, Esq.
*Attorneys for U.S. Bank & Citimortgage*     Meghan M. Breen, Esq.
50 Beaver Street
Albany, New York 12207

Robert E. Littlefield, Jr., United States Bankruptcy Judge

### MEMORANDUM-DECISION AND ORDER

The matter before the court is a motion for partial summary judgment jointly filed by

U.S. Bank as Trustee ("US Bank," "Defendant-Trustee," or the "Trustee") for the Structured

Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2004-19XS (the

"Trust"), and Citimortgage, Inc., as servicer for the Trust ("Citi," "Defendant-Servicer," or

"Servicer," and collectively with US Bank, "Defendants"), seeking dismissal of the adversary

proceeding brought by Robert Hilton ("Plaintiff") to disallow Defendants' claim and invalidate

Defendant-Trustee's corresponding mortgage lien.  The court's findings of fact and conclusions

of law are set forth herein pursuant to Federal Rule of Bankruptcy Procedure 7052.[1]

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1334.  This is a core

proceeding under 28 U.S.C.A. §§ 157(b)(2)(B) & (K).

## FACTS

The following facts are derived from the record before the court, including Defendants'

statement of undisputed facts ("Stmt.") submitted pursuant to Local Bankruptcy Rule 7056-1,[2]

the Affidavit of Misty Montag, a bankruptcy specialist for Defendant-Servicer ("Montag Aff.")

and the supporting exhibits ("Ex. to Montag Aff."), the Declaration of Defendants' attorney,

Meghan Breen ("Breen Decl."), and the records from the hearings held on January 29, 2015 and

February 26, 2015 ("1/29 Hr'g R."; "2/26 Hr'g R.")[3]

### 1. __Note and Mortgage__

On June 28, 2004, Plaintiff and his wife executed a note in the principal amount of

$73,850, made payable to the order of First National Bank of Arizona ("FNBA").  (Stmt. ¶ 1.)

---

[1] All section references refer to title 11 of the United States Code, and all rule references are to
the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

[2] Per the local rules, Defendants filed a separate, concise statement of the material facts as to
which they contend there are no genuine issues, supported by specific citations to the record.
Local Bankruptcy Rule 7056-1.  It was then incumbent on Plaintiff to file a separate, concise
statement of the material facts to which he contends there exist genuine disputes, supported by
specific citations to the record.  *Id.*  Because Plaintiff did not controvert any of Defendants' facts
in such a statement, pursuant Local Bankruptcy Rule 7056-1(c), each material fact set forth in
Defendants' statement of facts is deemed admitted.

[3] The parties did not elect and the court did not direct the parties to obtain a transcript of the
proceeding. The testimony referenced in this decision is based upon the court's review of the
electronic recordings of the hearings.

Plaintiff and his wife delivered the note to FNBA.  (Stmt. ¶ 1.)  Along with the note, Plaintiff and

his wife executed a mortgage against 375 Eighth Street, Troy, New York and delivered it to

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for FNBA and its

successors and assigns.  (Stmt. ¶ 3.)  The mortgage was recorded in the Rensselaer County

Clerk's Office on June 30, 2004.  (Stmt. ¶ 3.)  At some time after the closing, an allonge to the

note, which specifically references the note, but is undated, was indorsed from FNBA to First

National Bank of Nevada ("FNBN"), and then indorsed again, in blank, by FNBN.  (Stmt. ¶ 5.)

Each indorsement on the allonge is signed by the same individual, who signed both on behalf of

FNBA, as shipping officer, and on behalf of FNBN, also as shipping officer.  (Ex. C to Montag

Aff.)

        The note, mortgage and allonge were sent to US Bank in August 2004 pursuant to the

terms of an agreement between FNBA, as seller, and Lehman Brothers Holdings, Inc.

("Lehman"), as purchaser, for the acquisition of certain loans purportedly owned by FNBA.

("Bailee Letter"; Ex. D to Montag Aff.)  Pursuant to the terms of the Bailee Letter, the subject

notes were to be delivered to US Bank, as custodian for Lehman, for inspection prior to

purchase.  (Ex. D to Montag Aff.)  The Bailee Letter references a separate Advances and

Security Agreement between FNBA and Merrill Lynch, wherein FNBA granted Merrill Lynch a

security interest in those notes referenced in the Bailee Letter.  *Id*.  The Bailee Letter is signed on

behalf of FNBA by the same individual that signed the allonge, this time as Assistant Vice

President.  *Id*.  The Bailee Letter incorporates an attached loan schedule titled "FNBA Sale to US

Bank" and dated August 10, 2004, which references the Hilton loan.  *Id*.  FNBA and FNBN

terminated their business operations in or around 2008.  (1/29 Hr'g R.)

Pursuant to the electronic records used to track US Bank's possession of the note and mortgage ("Electronic Records"; Montag Aff. ¶ 10; Ex. E to Montag Aff.), the note and mortgage were registered into US Bank's system on August 19, 2004, nine days after the date of the Bailee Letter (Montag Aff. ¶ 10; Ex. E to Montag Aff.). The note and mortgage each have their own electronic record; there is no such record for the allonge. (Montag Aff. ¶¶ 13, 21; Ex. E to Montag Aff.)

Shortly after US Bank received the Hilton loan, it was securitized and pooled with other loans under the Trust, created by the trust agreement dated September 1, 2004 ("Trust Agreement"; Ex. G to Montag Aff.; Stmt. ¶ 7-8.) LaSalle Bank served as the initial trustee of the Trust. *Id.* LaSalle Bank and US Bank served as the initial custodians of the Trust. (Ex. G to Montag Aff.) The Trust was serviced according to a Servicing Agreement between Lehman and Aurora Loan Services Inc. ("Aurora"), pursuant to which Aurora agreed to act as the initial servicer for the Trust ("Servicing Agreement"). (Stmt. ¶ 8; Ex. F to Montag Aff.) In 2005, Citi became the new servicer for the Trust, (Stmt. ¶ 9; Ex. H to Montag Aff.), and US Bank became the successor trustee to the Trust (Stmt. ¶ 10). US Bank has maintained physical possession of the note since FNBA delivered the note to US Bank in 2004. (Stmt. ¶ 10; Montag Aff. ¶¶ 13, 17, 21; Ex. E to Montag Aff.). It is undisputed that US Bank currently possesses the original note, mortgage and allonge. (Stmt. ¶¶ 13-15; Breen Decl.) The allonge is not physically attached to the note, but both documents are kept in the same file. (1/29 Hr'g R.; 2/26 Hr'g R.)

## 2. __Proof of Claim__

On October 5, 2009, Defendant-Servicer obtained a Judgment of Foreclosure and Sale from the Rensselaer County Supreme Court ("Foreclosure Judgment"). (Stmt. ¶ 22, Ex. L to Montag Aff.) Plaintiff did not oppose the action. (Ex. L to Montag Aff. 2; Defs.' Reply ¶ 1.)

4

Subsequent to entry of the Foreclosure Judgment, but prior to a foreclosure sale, Defendant-

Servicer and Plaintiff executed a Stipulated Repayment Plan Agreement ("Forbearance

Agreement") whereby, in exchange for Defendant-Servicer's foregoing its foreclosure action,

Plaintiff agreed to cure his arrears, pay certain expenses related to the foreclosure action and

continue making payments under the terms of the mortgage.  (Ex. M to Montag Aff.)  The

Forbearance Agreement does not change Plaintiff's monthly obligations under the mortgage

note, but instead details the amounts owed by Plaintiff at the time of the Forbearance Agreement

and establishes due dates for those payments.  (Ex. M. to Montag Aff. 2.)  On November 22,

2010, based upon the execution of the Forbearance Agreement, the Foreclosure Judgment was

vacated and the foreclosure action was discontinued.  (Ex. N to Montag Aff.)  Defendant-

Servicer maintained a record detailing the payments made by Plaintiff on the Hilton loan, which

includes payments made under the Forbearance Agreement ("Payment Schedule").  (Ex. P to

Montag Aff.)  On the day Plaintiff filed his petition, he had a delinquent balance under the

Forbearance Agreement.  (Montag Aff. ¶¶ 35-36; Ex. P to Montag Aff.; Ex. A to Defs.' Reply.)

## PROCEDURAL HISTORY

Plaintiff filed his chapter 13 petition on January 23, 2014.  On schedule D of his petition,

Plaintiff listed Defendant-Servicer as a creditor holding a secured claim of $68,294.02.

Plaintiff's petition does not list Defendant-Servicer's claim as disputed.  Plaintiff's proposed

plan also lists Defendant-Servicer as a secured lender and provides for the curing of arrears

through the plan and for post-petition payments to be paid by the Plaintiff directly to Defendant-

Servicer.  (ECF No. 3.)  On April 23, 2014, Defendant-Servicer filed a proof of claim listing a

secured claim in the amount of $83,223.85.  (Claim No. 5.)  Defendant-Servicer's proof of claim

is filed on Official Bankruptcy Form B-10.  As attachments to its proof of claim, Defendant-

Servicer filed, inter alia, copies of the note, the recorded mortgage and the allonge.

On April 30, 2014, Plaintiff filed the adversary complaint initiating this action.  On June

20, 2014, Defendants filed their answer with seven affirmative defenses and one counterclaim

seeking reimbursement for their expenses incurred in defending this adversary proceeding.

Defendants filed an amended answer on June 25, 2014.  On June 30, 2014, Plaintiff filed his

answer to Defendants' counterclaim wherein he raised an affirmative defense disputing

Defendants' counterclaim.  On January 5, 2015, Defendants filed this motion.  Oral arguments

were heard on January 29, 2015 and February 26, 2015.  The court reserved judgment on the

matter on March 10, 2015.

## ARGUMENTS

Plaintiff brought this adversary proceeding to challenge the legitimacy of Defendants'

lien as well as the validity and amount of Defendants' underlying claim.  Defendants' motion for

partial summary judgment seeks the dismissal of both counts of Plaintiff's adversary complaint.[4]

A summary of each of the parties' arguments is provided below.

Defendants argue their claim should be allowed because they have demonstrated

Defendant-Trustee's rights as the holder of the mortgage note[5] by virtue of its physical

possession of the of the note and the indorsed-in-blank allonge.  Defendants argue the allonge is

sufficiently affixed to the note to create bearer paper.  Alternatively, Defendants' argue that

regardless of any defects related to the allonge, Defendant-Trustee still has rights as a transferee

with the rights of a holder.  To the extent Plaintiff challenges any transfers related to the Trust,

---

[4] Neither parties' submissions address Defendants' counterclaim.  Therefore, the court will treat
this as a motion for partial summary judgment on counts one and two of Plaintiff's adversary
complaint only.
[5] The court's use of the term "mortgage note" refers to a note secured by a mortgage.

Defendants argue Plaintiff lacks standing to challenge their rights arising under the Trust

Agreement based on the Second Circuit's recent decision, *Rajamin v. Deutsche Bank Nat. Trust*

*Co.*, 757 F.3d 79, 91 (2d Cir. 2014).  Regarding Plaintiff's challenges to the validity of the

signatures on the note and allonge, or the authority of their signatories, Defendants argue that the

affidavit of Plaintiff's counsel, the sole evidentiary support for Plaintiff's claims, contains only

unsupported assertions and, therefore, does not create any issues of fact.

In response, Plaintiff argues Defendant-Trustee is not the holder of the note because the

allonge is not properly affixed to the note.  Alternatively, Plaintiff questions the validity and

authenticity of the indorsements on the allonge, arguing that the allonge should not have been

indorsed by the same individual acting on behalf of two different entities, and that the indorser's

signature was forged.  Plaintiff also argues Defendants have not demonstrated they have the right

to enforce the note because they have not adequately proven the transactions through which they

received their rights in the note.  In particular, Plaintiff argues questions of fact exist as to

whether FNBA actually owned the note at the time it sold the note to Lehman, and as to whether

the note was transferred to the Trust.

With respect to the amount of their claim, Defendants argue that their claim should be

allowed for the full amount listed on their proof of claim.  Defendants aver they properly filed

their proof of claim and, therefore, Plaintiff bears the initial burden of disputing its amount.

Defendants argue Plaintiff has failed to meet his burden because the only evidence he submitted

in support of his claim, an affidavit of his attorney, contains nothing more than his attorney's

speculation about issues of which she has no personal knowledge.  Defendants further argue that

to the extent Plaintiff challenges any fees related to Defendant-Servicer's state court foreclosure

action, those fees are due and owing under the terms of the Forbearance Agreement.

Plaintiff contends Defendants' proof of claim should be expunged in its entirety because it is inflated.  In support of his argument, Plaintiff asserts he should not be charged for any of the fees related to the foreclosure action because: the foreclosure action never resulted in the sale of his property; the mortgage doesn't provide for the payment of attorney fees; and the foreclosure fees he agreed to pay were greater than the actual fees Defendant-Servicer incurred. Alternatively, Plaintiff argues he paid a larger portion of the foreclosure fees than what is reflected in Defendants' proof of claim.

Defendants also argue they have demonstrated that their lien is valid and enforceable. Defendants maintain that as a matter of New York law, the mortgage is deemed to follow the note.  Therefore, according to Defendants, once the court determines Defendant-Trustee has the right to enforce the note, it necessarily follows that it has the right to enforce the corresponding mortgage.

Plaintiff argues Defendants are required to prove their rights in the mortgage by producing evidence of a complete chain of custody of the mortgage from its origination and that they have failed to do so.  Plaintiff also asserts the rights in the note and mortgage were fatally separated when FNBN took possession of the note without the mortgage and as a matter of law, any separation of rights in the note and mortgage necessarily and permanently invalidates the mortgage.[6]

Plaintiff also objects to the admissibility of the Montag Affidavit and to the authenticity of the documents attached to it due to Ms. Montag's purported lack of personal knowledge of the matters about which she testifies.  Plaintiff further argues that because Defendant-Servicer was

---

[6] It is difficult to understand this argument.  Plaintiff offers no explanation as to how the rights in the note and mortgage separated.  Rather, it appears Plaintiff argues the separation of rights occurred automatically when the note and mortgage were physically separated.

not the servicer for the Trust at the time the Trust was created, its employees, including Ms.

Montag, can have no firsthand knowledge of the transfer of the note and mortgage to the Trust.

Defendants respond that Defendant-Servicer's employees may be found to have personal

knowledge of Defendant-Trustee's records by virtue of Defendant-Trustee's relationship as

servicer to Defendant-Trustee.  Additionally, Defendants assert the affidavit of Ms. Montag

should be admissible as evidence since it provides sufficient detail relating to the physical

delivery of the note to Defendant-Trustee to demonstrate Ms. Montag's personal knowledge of

the matters about which she testifies.

## DISCUSSION

A court shall grant summary judgment if the movant shows there is no genuine dispute as

to any material fact and they are entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a);

Fed. R. Bankr. P. 7056.  The movant bears the initial burden of demonstrating that no genuine

dispute exists as to any material fact.  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241,

244 (2d Cir. 2004).  A fact is material only if its resolution would affect the outcome of the

adversary proceeding.  *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).  A genuine

factual dispute exists when "the evidence is such that a reasonable jury could return a verdict for

the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,

2510, 91 L. Ed. 2d 202 (1986).  "In determining whether a genuine issue of material fact exists, a

court must resolve all ambiguities and draw all reasonable inferences against the moving party."

*Webster v. City of New York*, 333 F. Supp. 2d 184, 193 (S.D.N.Y. 2004).  If the movant meets its

initial burden, in order to defeat summary judgment, the non-movant must offer sufficient

evidence to demonstrate the existence of a genuinely disputed material fact.  *Anderson*, 477 U.S.

at 248.  The non-movant must set forth specific facts that show there are triable issues and cannot

9

rely merely on pleadings containing allegations or denials. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the facts are "so one-sided that one party must prevail as a matter of law," then summary judgment should be granted. *Anderson*, 477 U.S. at 248.

A ruling on Defendants' summary judgment motion requires a determination of their rights in the subject mortgage note. In determining property rights, unless some federal interest requires otherwise, bankruptcy courts look to state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918 (1979). Accordingly, New York law instructs the court's review of this matter.[7]

## 1. **Evidentiary Dispute**

Prior to addressing the parties' substantive arguments, the court must rule on the objections raised by each of the parties concerning the admissibility of their opponent's supporting affidavits and the documentary evidence attached thereto. For the reasons to follow, the court overrules each of Plaintiff's objections and sustains Defendants' objection.

Federal Rule of Evidence 602 provides in relevant part, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. The test for whether a witness may testify about a particular matter is whether a reasonable trier of fact could believe the witness had personal knowledge of that matter. *See Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 763 (2d Cir. 1991); *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000). Generally, employees have personal knowledge to testify about their experiences at their place of

---

[7] It is undisputed that New York law controls this action.

employment.  *See Larouche v. Webster*, 175 F.R.D. 452, 454 (S.D.N.Y. 1996)(citing *Christian

Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 38 (2d Cir.1986); *In re Stevenson*, 2013 WL

8149187, at *5 (Bankr. D.D.C. Jan. 4, 2013) *report and recommendation adopted*, 519 B.R. 881

(D.D.C. 2014), *aff'd*, 2015 WL 3688178 (D.C. Cir. June 16, 2015).  Moreover, employees are

generally found to have personal knowledge of, and therefore may testify in relation to, records

of their employers that they reviewed in their official capacities.  *See Stevenson*, 2013 WL

8149187, at *5; *MSCI 2007-IQ16 Granville Retail, LLC v. UHA Corp., LLC*, 2015 WL 542176,

at *5 (S.D. Ohio Feb. 10, 2015); *Danone Asia Pte. v. Happy Dragon Wholesale, Inc.*, 2006 WL

845573, at *4 (E.D.N.Y. Mar. 29, 2006); *Larouche*, 175 F.R.D. at 454 (citing *Londrigan v. Fed.

Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C.Cir.1981)).  However, testimony by affiants

without personal knowledge should be stricken.  *See Larouche*, 175 F.R.D. at 455.  Thus, courts

have consistently stricken affidavits made by a party's attorney where there was no indication

that the attorney had personal knowledge of the matters about which they testified.  *See Randell

v. United States*, 64 F.3d 101, 109 (2d Cir. 1995); *Crown Heights Jewish Cmty. Council, Inc. v.

Fischer*, 63 F. Supp. 2d 231, 241 (E.D.N.Y. 1999), *aff'd sub nom., Crown Heights Jewish Cmty.

Council, Inc. v. Fisher*, 216 F.3d 1071 (2d Cir. 2000); Fed. R. Civ. P. 56.

    An affiant's testimony that is found to be based on personal knowledge may be sufficient

to authenticate a piece of evidence related to that affiant's testimony.  The Second Circuit has

clearly set out the standard for proving authentication:

> The authentication prerequisite simply requires the proponent to submit "evidence
> sufficient to support a finding that the matter in question is what its proponent
> claims." Fed. R. Evid. 901(a). This requirement is satisfied "'if sufficient proof
> has been introduced so that a reasonable juror could find in favor of authenticity
> or identification.'" *United States v. Ruggiero,* 928 F.2d 1289, 1303 (2d Cir.)
> (quoting 5 J. Weinstein & M. Berger, *Weinstein's Evidence* § 901(a)[01] (1990)),
> *cert. denied,* 502 U.S. 938, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991). "[T]he burden
> of authentication does not require the proponent of the evidence to rule out all

> possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." *United States v. Holmquist,* 36 F.3d 154, 168 (1st Cir.1994), *cert. denied,* 514 U.S. 1084, 115 S.Ct. 1797, 131 L.Ed.2d 724 (1995).

*United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999).  Under Federal Rule of Evidence 901, a party may authenticate a piece of evidence through the use of testimony of a witness, provided the witness has personal knowledge of the subject evidence.  *See* Fed. R. Evid. 901(b)(1).  Thus, where an affiant is found to have sufficient personal knowledge to testify in relation to certain documents, that same personal knowledge may suffice to authenticate those documents.  *See Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461-62 (S.D.N.Y. 2000); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 2007 WL 74304, at *2 (E.D.N.Y. Jan. 8, 2007); *Saint Francis Hosp.*, 94 F. Supp. 2d at 426; *Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*, 2007 WL 2815741, at *3-4 (E.D.N.Y. Sept. 25, 2007).

The affidavit submitted by Plaintiff was made by Plaintiff's counsel and includes certain affirmations related to counsel's review of Defendants' evidence.  Defendants object to the portion of the affidavit alleging that their proof of claim is inflated.  As the sole support for her affirmations related to the amount of Defendants' claim, Plaintiff's counsel indicates she reviewed Defendants' Payment Schedule, and that based on nothing more than her own understanding of the Payment Schedule, Defendants' proof of claim is augmented.  Because Plaintiff's counsel does not allege that she is or ever was an employee of either Defendant-Trustee or Defendant-Servicer, she clearly has neither personal knowledge of the transactions related to Defendants' Payment Schedule nor could she be found to have reviewed the Payment Schedule in an official capacity.  Therefore, Defendants' objection to the affidavit of Plaintiff's

counsel is sustained, and the court strikes the portion of counsel's affidavit, specifically

paragraphs 32 through 37, alleging Defendants' proof of claim is inflated.

At the other end of the spectrum is Ms. Montag, whose personal knowledge of the

matters about which she testifies is clearly established in her affidavit.  Ms. Montag states in her

affidavit that she is "employed as a Bankruptcy Specialist III with responsibility for assisting in

defensive matters affecting mortgage loans of [Defendant-Servicer] in bankruptcy cases."

(Montag Aff. ¶ 1.)  Further, Ms. Montag avers she is "fully familiar with the facts and

circumstances referred to [in her affidavit] based upon [her] knowledge of the business records

maintained by [Defendant-Servicer] in the ordinary course of business."  (Montag Aff. ¶ 4.)

Each of Ms. Montag's statements relate back to Defendant-Servicer's loan documents, which

documents are both cited in and attached to the affidavit.  Ms. Montag's statements indicate she

personally reviewed the documents about which she testifies and that she did so in her official

capacity as a bankruptcy specialist for Defendant-Servicer.  Therefore, Plaintiff's objections to

the Montag Affidavit are overruled, and Ms. Montag's affidavit is admitted and sufficiently

authenticates the documentary evidence attached thereto.

### 2. <u>Claim Objection</u>

The subject dispute includes objections to the validity and amount of Defendants' claim.

Congress has established a claim allowance process for filing and disputing claims.  11 U.S.C.A.

§§ 501-502; Fed. R. Bankr. P. 3001.  As this court has previously noted, the Third Circuit Court

of Appeals has summarized clearly the burden-shifting scheme arising under the claim allowance

process:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A.
> § 502(a) rests on different parties at different times.  Initially, the claimant must
> allege facts sufficient to support the claim.  If the averments in his filed claim
> meet this standard of sufficiency, it is "*prima facie*" valid.  *In re Holm*, 931 F.2d

> 620, 623 (9th Cir. 1991) (quoting 3 L. King, *Collier on Bankruptcy* § 502.02, at
> 502–22 (15th ed. 1991)).  In other words, a claim that alleges facts sufficient to
> support a legal liability to the claimant satisfies the claimant's initial obligation to
> go forward. The burden of going forward then shifts to the objector to produce
> evidence sufficient to negate the *prima facie* validity of the filed claim.  It is often
> said that the objector must produce evidence equal in force to the *prima facie*
> case. *Id.*; *see In re Windsor Communications Group, Inc.*, 45 B.R. 770, 773
> (Bankr. E.D. Pa. 1985).  In practice, the objector must produce evidence which, if
> believed, would refute at least one of the allegations that is essential to the claim's
> legal sufficiency.  If the objector produces sufficient evidence to negate one or
> more of the sworn facts in the proof of claim, the burden reverts to the claimant to
> prove the validity of the claim by a preponderance of the evidence.  *See In re
> WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D. Mass. 1983).

*In re Lehning*, 2007 WL 1200820, at *3 (Bankr. N.D.N.Y. Apr. 20, 2007)(quoting *In re*

*Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992)).  Thus, the court must consider

Defendants' summary judgment motion in the context of the claim allowance burden-shifting

scheme.  The analysis begins with an examination of Defendants' proof of claim.  The court will

then separately evaluate the validity and amount of Defendants' claim.

### a. Proof of Claim

The court finds Defendants' proof of claim was filed in accordance with the Federal

Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 3001.  Defendants filed their claim on

Official Bankruptcy Form B-10, in compliance with Rule 3001(c)(2).  Additionally, the copies of

the note, mortgage and indorsed-in-blank allonge attached to Defendants' proof of claim provide

sufficient evidence of Plaintiff's secured rights in satisfaction of Rule 3001(c)(1).  In particular,

Defendants' proof of claim evidences Defendant-Trustee's holder rights in the note and

ownership rights in the mortgage by demonstrating its possession of a note and an indorsed-in-

blank allonge.  *See* Fed. R. Bankr. P. 3001(c)(1); N.Y. U.C.C. §§ 3-202 & 1-201(21).  Finally,

the copy of the recorded mortgage attached to Defendants' proof of claim evidences the

perfection of Defendant-Trustee's security interest pursuant to Rule 3001(d).  *See Sovereign*

14

*Bank v. Strother*, 2013 WL 3243555, at *2 (N.D.N.Y. June 26, 2013). Therefore, because Defendants' proof of claim was properly filed, Plaintiff bears the initial burden of rebutting both the prima facie validity and amount of Defendants' claim. *See Allegheny Intern*, 954 F.2d at 173.

### b.   Validity of Claim

As mentioned, Defendants' proof of claim evidences their rights as a holder via negotiation by virtue of their possession of a note and concomitant indorsed-in-blank allonge.[8] Plaintiff has taken issue with the fact that the allonge is not physically attached to the note. Section 3-202 of the UCC provides, in part: "[a]n indorsement must be written . . . on the instrument or on a paper so firmly affixed thereto as to become a part thereof." Moreover, Official Comment 3 to N.Y. U.C.C. § 3-202 provides:

> Subsection (2) follows decisions holding that a purported indorsement on a mortgage or other separate paper pinned or clipped to an instrument is not sufficient for negotiation. The indorsement must be on the instrument itself or on a paper intended for the purpose which is so firmly affixed to the instrument as to become an extension or part of it. Such a paper is called an allonge.

N.Y. U.C.C. § 3-202 cmt. 3. While this language sets no specific outer-bounds for the definition of "affixed," it is clear that in this case, because the allonge is not at all touching or connected to the note, it does not fall within the UCC's contemplation. Due to this defect, the indorsement from FNBA to FNBN and FNBN's blank indorsement are each inadequate under N.Y. U.C.C. § 3-202. Thus, Defendant-Trustee is not a holder by virtue of its possession of a properly indorsed negotiable instrument, *see* N.Y. U.C.C. § 1-201(21), but is instead in possession of a note payable to the order of FNBA. This, in and of itself, is insufficient to prove Defendant-Trustee's holder status.

---

[8] This decision concerns the standing of non-originators to enforce their mortgage notes in New York foreclosure actions and its scope should be limited to such contexts.

Plaintiff's rebuttal of Defendant-Trustee's prima facie holder status shifts the burden to Defendants, who must prove by a preponderance of the evidence the validity of their claim. *See Allegheny Intern*, 954 F.2d at 173. While Defendants' proof of claim evidences only their acquisition of holder rights via negotiation, they have produced sufficient evidence in support of their motion to establish Defendant-Trustee's status as a holder via transfer.

Unlike holders that receive their rights through negotiation, assignees or transferees[9] must prove that the transactions through which they acquired their interests vested them with ownership or holder rights to demonstrate their foreclosure standing. *See Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 360-62, 12 N.Y.S.3d 612, 614-15, 34 N.E.3d 363, 365-66 (2015); *Bank of New York v. Silverberg*, 926 N.Y.S.2d 532, 538 (App. Div. 2011).[10] Generally, this requires the foreclosing party to prove first that the transaction through which they received their interest in the mortgage note was properly made and, second, that the individual from whom they received their interest in the mortgage note either held or owned it. *See Taylor*, 25 N.Y.3d 355, 360-62, 12 N.Y.S.3d 612, 34 N.E.3d 363; *Silverberg*, 926 N.Y.S.2d at 538.[11] A discussion of each requirement is provided below.

---

[9] For mortgage notes, in addition to ownership rights, individuals may also have holder rights under the UCC. Holder rights are conveyed through transfers or negotiations. A negotiation vests the party acquiring the note with rights of a holder. *See* N.Y. U.C.C. § 3-202. Alternatively, a transfer vests the transferee with only those rights of the transferor, as do assignments of ownership rights. *See* N.Y. U.C.C. § 3-201; N.Y. U.C.C. § 3-201 cmt. 8.

[10] When a foreclosing entity's standing is undisputed, or insufficiently disputed, the foreclosing entity may demonstrate its right to foreclose without proving its ownership or holder rights in the mortgage note. *See Deutsche Bank Nat. Trust Co. v. Pietranico*, 928 N.Y.S.2d 818, 823 (Sup. Ct. 2011), *aff'd*, 102 A.D.3d 724, 957 N.Y.S.2d 868 (2013). If, however, standing is disputed, the foreclosing entity must demonstrate ownership or holder rights. Thus, New York cases where standing is disputed are instructive for this matter.

[11] For transfers or assignments, it is fundamental that the conveying party can transfer only those rights that it actually has. *See Silverberg*, 926 N.Y.S.2d at 538-39. Therefore, despite the fact that a transfer can be made by physical delivery, it is imperative to analyze the rights of a purported transferee's or assignee's predecessors. *Compare* N.Y. U.C.C. § 3-306 cmt. 5 *with*

Today, in the context of determining the proper form of an assignment of ownership

rights in a mortgage note, courts unfailingly state that an assignment can be effectuated by

"[e]ither a written assignment of the underlying note or the physical delivery of the note . . . ."

*U.S. Bank, N.A. v. Adrian Collymore*, 890 N.Y.S.2d 578, 580 (App. Div. 2009)(citing *Weaver*

*Hardware Co. v Solomovitz*, 235 NY 321 (1923); *Payne v Wilson*, 74 NY 348, 354-355

(1878)).[12]  Certain courts have expanded this definition and held that physical delivery does not

only constitute a proper assignment of ownership rights, but that it also serves to transfer holder

rights pursuant to N.Y. U.C.C. § 3-201.  *See Silverberg*, 926 N.Y.S.2d at 538-39; *Homecomings*

*Fin., LLC v. Guldi*, 969 N.Y.S.2d 470, 473-74 (App. Div. 2013); *Aurora Loan Services, LLC v.*

*Taylor*, 980 N.Y.S.2d 475, 478-79 (App. Div. 2014), *aff'd*, 25 N.Y.3d 355 (2015).  While the

UCC governs conveyances of holder rights, these decisions appear to constitute the judiciary's

supplementation of the UCC pursuant to N.Y. U.C.C. § 1-103.[13]  This judicial action is required

---

N.Y. U.C.C. § 3-201; *Silverberg*, 926 N.Y.S.2d at 538-39 (holding plaintiff did not obtain holder or ownership rights because the entity from whom it received the note did not have those rights). For this reason, if a foreclosing entity's holder rights are not evidenced on the face of their note, to prove their prima facie holder or ownership status, the foreclosing party must offer extrinsic evidence to prove that the entity from whom they received the note actually held or owned it. *See Taylor*, 25 N.Y.3d 355, 360-62, 12 N.Y.S.3d 612, 34 N.E.3d 363; *Silverberg*, 926 N.Y.S.2d at 538-39; *Squadron*, 504 Fed. Appx. 30, 33; *but see Nationstar Mortgage, LLC v. Wong*, 18 N.Y.S.3d 669, 672 (App. Div. 2015) (holding plaintiff had foreclosure standing via physical possession of note without analyzing rights of entity that conveyed note or indorsements on note); *HSBC Bank USA, Nat. Ass'n v. Spitzer*, 18 N.Y.S.3d 67, 68 (App. Div. 2015)(same).

[12] Because the issue before the court concerns a purported transfer of rights through physical delivery, the court will not address written assignments.

[13] N.Y. U.C.C. §1-103 provides:

    (a) This act must be liberally construed and applied to promote its underlying purposes
        and policies, which are:
        (1) to simplify, clarify, and modernize the law governing commercial
            transactions;
        (2) to permit the continued expansion of commercial practices through custom,
            usage, and agreement of the parties; and
        (3) to make uniform the law among the various jurisdictions.

because while N.Y. U.C.C. § 3-201 contemplates the effect of a transfer, it is silent as to the requisite form of a transfer.[14]  Because the court agrees with these decisions, it holds the physical delivery of a note does not only constitute a proper assignment of ownership rights, but it also serves to transfer holder rights.

For a transferee to prove their prima facie acquisition of holder rights, they must trace the note's chain of custody from their receipt back to the last individual who held the note pursuant to N.Y. U.C.C. § 1-201(21).  *See Silverberg*, 926 N.Y.S.2d at 538-39; *Taylor*, 980 N.Y.S.2d at 477 (App. Div.);[15] N.Y. U.C.C. § 3-201; N.Y. U.C.C. § 3-201 cmt. 8.[16]  Once a transferee has

---

      (b) Unless displaced by the particular provisions of this act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

[14] As to the effect of a transfer, article 3 of the UCC, as adopted by New York, provides, a "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein." N.Y. U.C.C. § 3-201.  While the version of article 3 adopted by New York does not express any requisite form of a transfer, N.Y. U.C.C. § 3-306(2) and the revised version of the UCC indicate that equating the physical delivery requirement to transfers of holder rights likely does not infringe upon, but instead seems to advance, the UCC's principles.  Section 3-306(2) of the New York UCC provides: "Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (Section 3-201)."  The revised version of article 3 states: "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument."  U.C.C. § 3-203 (Am. Law Inst. & Unif. Law Comm'n 2002).

[15] In *Taylor*, the Appellate Division found that the plaintiff held the note, as a transferee with the rights of a holder, by virtue of the note holder's physical delivery of the note, indorsed in its name, to the plaintiff.  *See Taylor*, 980 N.Y.S.2d 475, 477 (App. Div.).  Without explanation, in affirming the Appellate Division, the Court of Appeals analyzed the plaintiff's ownership rights rather than its holder rights.  *See Taylor*, 25 N.Y.3d 355, 614-15, 12 N.Y.S.3d 612, 34 N.E.3d 363.  In this court's opinion, the Court of Appeals' affirmation based on an alternative legal theory does not overturn or call into doubt the Appellate Division's holding, but instead extends it.  An explanation likely would be warranted if the alternative were true.

[16] Official Comment 8 to N.Y. U.C.C. § 3-201 provides, in part:

      The final clause of subsection (3) . . . is intended to make it clear that the transferee without indorsement of an order instrument is not a holder . . . .  The terms of the obligation do not run to him, and he must account for his possession

established their acquisition of holder rights, they are entitled to all of the rights of a holder. *See* N.Y. U.C.C. § 3-201 cmt. 8.[17]

In this case, Defendant-Trustee's rights as a transferee via physical delivery are evidenced by its undisputed possession of the original note indorsed to FNBA, the Bailee Letter and attached loan schedule specifically referencing the Hilton loan, and the Electronic Records. Together, this evidence demonstrates FNBA held the note, by virtue of its physical possession of a note indorsed in its name; that it physically delivered the note to Defendant-Trustee; and finally that Defendant-Trustee has since maintained physical possession of the note.

Having proven Defendant-Trustee's prima facie transferee status, Defendants are therefore entitled to enforce the note absent proper objection by Plaintiff. Accordingly, to defeat Defendants' motion, it is incumbent upon Plaintiff to raise a genuinely disputed material issue of fact, supported by admissible evidence, relevant to Defendant-Trustee's holder status. *See Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). In this case, however, each of the questions of fact Plaintiff attempts to raise in relation to Defendant-Trustee's status as holder are entirely without evidentiary support and, accordingly, those contentions will not be considered. *See Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir.1994); *Cordiano*, 575 F.3d at 204. Therefore, as a matter of law, the court finds Defendant-Trustee holds the note.

---

of the unindorsed paper by proving the transaction through which he acquired it. Proof of a transfer to him by a holder is proof that he has acquired the rights of a holder and that he is entitled to the presumption.

N.Y. U.C.C. § 3-201 cmt. 8.

[17] The question of Defendant-Trustee's status as an assignee with the rights of an owner has not been placed before the court and will therefore not be considered.

While ultimately unpersuasive, Plaintiff makes two arguments (posed as factual disputes but hinging on legal questions) that are worth addressing. First, Plaintiff argues Defendants did not sufficiently prove the transactions through which Defendant-Trustee received its holder rights. In particular, Plaintiff takes issue with the fact that the allonge indicates FNBA delivered the note to FNBN, but that the Bailee Letter indicates US Bank received the note from FNBA. (Affirmation in Opp. to Mot. Summ. J. ¶ 24.) Plaintiff argues Defendants were obliged to produce evidence of the conveyance of the note from FNBN back to FNBA and that their failure to do so leaves unresolved material questions of fact. This argument conflates the evidentiary requirements for proving ownership and holder rights. To establish Defendant-Trustee's holder rights as a transferee, Defendants were only required to produce evidence of the transfers back to the last holder. Because the conveyances between FNBA and FNBN occurred prior to the transfer from FNBA to Defendant-Trustee, they are simply irrelevant to the question of Defendant-Trustee's prima facie holder status. By introducing no evidence related to the conveyances between FNBA and FNBN, Plaintiff has failed to show why those transactions are relevant to the question of Defendant-Trustee's rights in the note. Moreover, even assuming, arguendo, that Plaintiff did raise some questions of fact related to the transactions between FNBA and FNBN, those arguments are not Plaintiff's to raise. Once an individual proves their prima facie holder rights in a negotiable instrument, the UCC restricts the obligor from asserting the claims of third parties, including claims of legal or equitable title, rescission of negotiation based in, inter alia, fraud, duress or illegality, or claims based on conditional delivery or delivery for a special purpose. *See* N.Y. U.C.C. §§ 3-306(d) & 3-603; N.Y. U.C.C. § 3-306 cmt. 5.[18]

Therefore, Plaintiff is precluded from disputing Defendant-Trustee's right in the note based on

---

[18] To be clear, the UCC creates a limited exception for theft. *See* N.Y. U.C.C. §§ 3-306 & 3-603. This exception is not relevant to this case as Plaintiff has raised no allegations related to theft.

claims that properly belong to, if anyone, FNBN. *See* N.Y. U.C.C. §§ 3-306(d) & 3-603; N.Y.
U.C.C. § 3-306 cmt. 5.

Plaintiff also argues Defendants were required, but failed, to produce evidence that the
note was transferred to the Trust. While Plaintiff provides no explanation of his argument,
because it is undisputed that Defendant-Trustee has maintained its possession of the note since
its receipt, and that it also served as the initial custodian of the Trust, it appears Plaintiff is
arguing that Defendant-Trustee should have taken some steps to formalize the fact that it
possessed the note not in its own name, but for the benefit of the Trust. This argument clearly
does not relate to Defendant-Trustee's holder status, but instead seems to raise a challenge that
would arise under the Trust or Servicing Agreements. As mentioned just above, the UCC estops
Plaintiff from making such a challenge, which belongs to, if anyone, the beneficiaries of the
Trust. *See* N.Y. U.C.C. §§ 3-306(d) & 3-603; N.Y. U.C.C. § 3-306 cmt. 5. Moreover, the court
agrees with Defendants that pursuant to *Rajamin*, Plaintiff lacks prudential standing[19] to
challenge those agreements since he was not a party to, or an intended or actual beneficiary of,
either. *See* 757 F.3d at 86-90.

### c. *Amount of Claim*

For the reasons to follow, the court finds Plaintiff has failed to meet his initial burden of
disputing the amount of Defendants' claim and, therefore, Defendants' claim is admitted in the
full amount reflected on their proof of claim. As a matter of law, Plaintiff argues that he is not
obligated to pay the portion of Defendants' claim related to the foreclosure action because the
action never resulted in the sale of his property, and the mortgage doesn't provide for the

---

[19] Here, Defendants challenge Plaintiff's standing to raise certain objections in a New York
foreclosure action, not his standing to pursue his claim and lien objections in this court.
Therefore, the question of constitutional standing is not relevant to the court's analysis.

payment of attorney fees. While Plaintiff has provided no legal or evidentiary support for either

of his arguments, Defendants have produced a copy of the Forbearance Agreement, wherein

Plaintiff expressly agreed to pay foreclosure fees in the amount listed on Defendants' proof of

claim in exchange for Defendant-Servicer stopping its foreclosure action. The court finds the

uncontroverted Forbearance Agreement refutes each of Plaintiff's contentions.

Plaintiff's only other challenge to the amount of Defendants' claim is that the fees related

to the foreclosure action listed on the proof of claim are inflated. In support of this position,

Plaintiff provided only the affirmation of his attorney, which, as mentioned above, has been

stricken in all relevant parts. Because the affirmation is the only evidence supporting Plaintiff's

allegation, Plaintiff has failed to meet his initial burden of disputing the amount of Defendants'

claim. Finding no legal or factual barriers, the court therefore allows Defendants' claim for the

full amount reflected on their proof of claim.

### 3. **Lien Objection**

Plaintiff's objection to the validity of Defendants' lien raises no questions of fact, only

questions of law. However, the dispositive legal issue is well settled and falls in Defendants'

favor. Therefore, for the reasons set forth below, Defendant-Trustee is found to own the

mortgage.

The longstanding tenet of New York law is that in the conveyance of a mortgage note, to

either a holder or assignee, the dispositive instrument is the note, and the mortgage follows the

note as an inseparable incident. *See Taylor*, 25 N.Y.3d 355, 361-62, 12 N.Y.S.3d 612, 34 N.E.3d

363; *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 838 N.Y.S.2d 622 (App. Div. 2007).

This enduring principle was long ago recited by the United States Supreme Court as follows:

"[t]he note and mortgage are inseparable; the former as essential, the latter as an incident. An

assignment of the note carries the mortgage with it, while an assignment of the latter alone is a

nullity." *Carpenter v. Longan*, 83 U.S. 271, 274, 21 L. Ed. 313 (1872); *see Taylor*, 25 N.Y.3d at

361, 12 N.Y.S.3d 612, 34 N.E.3d 363 (citing *Silverberg*, 926 N.Y.S.2d at 537, which cites

*Carpenter* for principle that the mortgage follows the note as an inseparable incident).  In *Taylor*,

the Court of Appeals reaffirmed this rule, while also including the narrow caveat that parties to

an assignment may agree that the assignor retain its rights in the mortgage and assign only the

note. *See Taylor*, 25 N.Y.3d 355, 361, 12 N.Y.S.3d 612, 34 N.E.3d 363.  Thus, following

*Taylor*, without evidence of an agreement to assign the note without the mortgage,[20] a court

should deem a mortgage to reside with its corollary note. *Id.*; *Carpenter*, 83 U.S. at 274; *Merritt

v. Bartholick*, 36 N.Y. 44, 45 (1867); *Rajamin*, 757 F.3d at 91; *Squadron*, 504 Fed. Appx. at 33;

*Silverberg*, 926 N.Y.S.2d at 537; *Flyer v. Sullivan*, 134 N.Y.S.2d 521 (App. Div. 1954);

*Goettlicher v. Wille*, 134 N.Y.S. 977, 978 (Sup. Ct. 1912), *aff'd*, 141 N.Y.S. 1121 (App. Div.

1913); *U.S. Bank Nat. Ass'n v. Dellarmo*, 942 N.Y.S.2d 122, 124-25 (App. Div. 2012);

*Collymore*, 890 N.Y.S.2d at 580; *Coakley*, 838 N.Y.S.2d at 623; *Caraballo v. Homecomings

Fin.*, 2014 WL 2117225, at *3-4 (S.D.N.Y. May 21, 2014); *Bank of New York Mellon v. Deane*,

970 N.Y.S.2d 427, 432 (Sup. Ct. 2013).  Accordingly, because the court has found Defendant-

Trustee holds the note, it follows as a matter of, if nothing else, legal fiction, that it also owns the

incidental mortgage.

## CONCLUSION

For the reasons stated above, the first and second counts of Plaintiff's adversary

---

[20] While the issue has not been placed before the court, in light of the Second Circuit's holding in *Rajamin*, it appears Plaintiff would lack standing to object to such an agreement. *See* 757 F.3d at 85-90.

complaint are hereby dismissed.  The court hereby sets a pretrial conference for **January 20,**

**2016 at 11:00 a.m.** to address the single remaining issue, namely, Defendants' counterclaim.

It is SO ORDERED.

Dated: January 11, 2016                      /s/ Robert E. Littlefield, Jr.
Albany, New York                             Robert E. Littlefield, Jr.
                                             United States Bankruptcy Judge